ORIGINAL

FILED

2010 APR -5 P 2:28

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. C......

BY FAX

Jonathan Shub (SBN 237708)
jshub@shublaw.com
**SHUBLAW LLC**
1818 Market Street, 13th Floor
Philadelphia, PA 19102
Telephone: (610) 453-6551
Facsimile: (215) 569-1606

Christopher A. Seeger (pro hac vice)
cseeger@seegerweiss.com
**SEEGER WEISS LLP**
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax:    (212) 584-0799

[Additional Counsel listed on signature page]

*Attorneys for Plaintiff and the Proposed Class*

ADR

E-filing

HRL

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

BARRY FELDMAN, individually and on behalf of all others similarly situated,

　　　　　　Plaintiff,

　　v.

GOOGLE, INC.,

　　　　　　Defendant.

Case No.: CV10-01433

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

　　　Plaintiff, BARRY FELDMAN by and through his attorneys, allege on personal knowledge as to all facts related to himself and on information and belief as to all other matters, which are based upon, among other things, the investigation made by Plaintiff through his counsel and personal knowledge, as follows:

**PRELIMINARY STATEMENT**

1.      This is a class action lawsuit, brought by, and on behalf of, a nationwide class of individuals whose privacy rights were violated by the actions of Google Inc. ("Google") through its Buzz program.

2.      Google automatically added the Google Buzz service to the accounts of all users of Google's "Gmail" service.

3.      Google Buzz made private data belonging to Gmail users publicly available without the users' knowledge or authorization.  This information included some or all of the following: personal contact information, place of residence, occupation, and a list of the users' frequent email contacts.

4.      Google Buzz searched for and acquired pictures, video, text and other data that users had posted to websites such as Picasa and YouTube.  Buzz automatically sent those posts to the email accounts of the users' frequent email contacts without the users' knowledge or authorization.

5.      When launching its Buzz service, Google failed to provide users with clear information detailing the nature of the new service, including the automatic application of the Buzz program and its provisions for default disclosure of personal information and default sharing of posts previously made to other websites.

6.      Google has publicly admitted that its Buzz program presents privacy concerns, and Google has made several waves of modifications to the program.  However, Google's modifications do not go far enough to address the problem.  Furthermore, Google's actions have already caused damage because the Buzz program disclosed private user information the moment Google launched the service.

7.      Google's public disclosure of private user data violates users' rights under the Federal Wiretap Act, the Federal Computer Fraud and Abuse Act, the Federal Stored Communications Act, and California common law.

1

## JURISDICTION AND VENUE

2      8.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for

3   deprivation of rights guaranteed under the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, the Stored

4   Communications Act, 18 U.S.C. § 2701 *et seq.*, and the Computer Fraud and Abuse Act, 18

5   U.S.C. § 1030 *et seq.* This Court also has jurisdiction pursuant to 28 U.S.C. § 1367(a) over

6   Plaintiff' state common law claims. Jurisdiction is also founded upon 28 U.S.C. § 1332(d) in that

7   this is a putative class action with more than 100 class members, more than $5 million in

8   controversy, and minimal diversity of citizenship.

9      9.      Venue is appropriate pursuant to 28 U.S.C. § 1391(b) and (c). A substantial

10  portion of the events and conduct giving rise to the violations alleged in this complaint occurred

11  in this District. Defendant Google resides here as it maintains its principle office and

12  headquarters in this District.

13

## PARTIES

14     10.     Plaintiff Barry Feldman is a user of Google's "Gmail" email service. He resides

15  in New York, NY. Prior to Google's launch of the Buzz program, Plaintiff Feldman used the

16  Gmail program to create a personal "Google Profile." Google automatically activated the Buzz

17  program on Plaintiff Feldman's email account. As a result, Buzz broadcast his personal

18  information, including a list of his frequent email contacts and the information stored in his

19  Google Profile, to other Gmail users and/or made this information publicly viewable on the

20  Internet.

21     11.     Defendant Google Inc. is a Delaware corporation headquartered at 1600

22  Amphitheatre Parkway, Mountain View, CA 94043. Google provides a variety of Internet-

23  related services, including email service through its "Gmail" program. Google does business

24  throughout the United States, and in particular, does business in the State of California and in this

25  district.

26

## STATEMENT OF COMMON FACTS

27     12.     Google launched the Google Buzz program on or about Tuesday, February 9,

28  2010. Google Buzz enables users of Google's "Gmail" service to share written posts, photos,

1   hyperlinks, and other information with other Gmail users.  It is Google's attempt to compete with

2   social networking programs such as Facebook and Twitter.

3        13.    To jump-start that competition, Google, without any authorization by Gmail users,

4   automatically added Google Buzz to the accounts of all Gmail users.

5        14.    When Buzz was first rolled out on February 9, Gmail users who accessed their

6   mail accounts were initially given two options: (1) set up Google Buzz; or (2) continue to Gmail

7   inbox.  Regardless of which option the user chose, Google automatically activated the Buzz

8   program on that user's Gmail account.  Option (2) therefore deceptively implied that by selecting

9   it, and not the "set up Google Buzz" option, the user was not activating Buzz.  In fact Google

10  activated Buzz even if the user did not elect to "set up" the program.

11       15.    Google Buzz automatically created a list of "followers" for each Gmail user.

12       16.    Google Buzz also automatically created a list of persons whom the user was

13  automatically "following."

14       17.    Google Buzz "posted" to Buzz any information that was previously posted to

15  certain other websites, some of which are owned by Google, including but not limited to Picasa,

16  YouTube, Google Reader, and Twitter.

17       18.    Google created the "follower" and "following" lists by using an algorithm that

18  selected those email contacts with whom a Gmail user communicated most frequently.  This

19  meant that Google shared information about a Gmail user with the users' frequent mail contacts.

20  By contrast, a social networking program such as Facebook shares information with "Friends"

21  only after both parties have agreed to become Friends.  An individual's email contacts may be a

22  different group of people (for example, professional contacts) than the group with whom a user

23  would want to be in a *social* network.  By implementing the Buzz program, Google forced upon

24  its Gmail users Google's own definition of an appropriate social network, all in an effort to jump-

25  start Google's entry into a new consumer market.

26       19.    When Google automatically activated Google Buzz in a user's Gmail account,

27  Google's unilateral actions had significant privacy consequences, including but not limited to:

        • the "following" and "follower" lists of each user were made publicly

28          available on the web;

- the "following" and "follower" lists of each user were made available to persons following that user;

- followers could view any information posted on Buzz by someone they were following;

- for Gmail users who had created a "Google Profile," the contents of the profile became visible to all persons who were "following" the user. A user's Google Profile may contain information such as the user's occupation, place of residence, and contact information;

- for Gmail users who had created a "Google Profile," the "following" and "follower" lists of the user became visible to all persons who were "following" the user, and were made publicly available to be searched and viewed by any person on the Internet.

20.    Google's own privacy policy confirms these points:

When you first enter Google Buzz, to make the startup experience easier, we may automatically select people for you to follow based on the people you email and chat with most. Similarly, we may also suggest to others that they automatically follow you . . . Your name, photo, and the list of people you follow and people following you will be displayed on your Google profile, which is publicly searchable on the Web.

Google Buzz Privacy Policy, February 11, 2010, available at

http://www.google.com/buzz/help/intl/en/privacy.html.

21.    The procedures by which Gmail users could opt-out of Buzz were either unavailable or difficult to understand and execute.

22.    Google's automatic sharing of user contact information, profile information, and postings had the effect of revealing to the public confidential and sometimes highly sensitive information. This means that, for example, the names of a doctor's patients or a lawyer's clients were made public in contravention of the privileges that attach to those relationships. Sensitive personal information might be exposed to an employer, or an ex-spouse.

23.    This parade of horribles is more than hypothetical. The media reported the following exemplary accounts:

- A woman whose contact information was made available to her abusive ex-boyfriend because Google Buzz automatically selected him as one of her "followers" in Google Buzz. *See* Miguel Helft, *Critics Say Google Invades Privacy With a New Service*, N.Y. Times, February 13, 2010.

- Lawyers and journalists concerned that Google Buzz might reveal confidential

client and contact lists. Don Cruse, *Lawyers (or journalists) with Gmail Accounts: Careful with the Google Buzz*, February 11, 2010, available at http://www.scotxblog.com/legal-tech/lawyer-privacy-on-google-buzz.

- A political commentator concerned that authoritarian governments might "check on Google Buzz accounts for political activists and see if they have any connections that were previously unknown to the government." Evgeny Morozov, *Wrong Kind of Buzz Around Google Buzz*, February 11, 2010, available at http://neteffect.foreignpolicy.com/posts/2010/02/11/wrong_kind_of_buzz_around_google_buzz.

24. A Google spokesperson confirmed to one blogger that Buzz automatically makes user contact lists public:

> [B]efore you change any settings in Google Buzz, someone could go into your profile and see the people you email and chat with most.

> A Google spokesperson asked us to phrase this claim differently. Like this: "In other words, after you create your profile in Buzz, if you don't edit any of the default settings, someone could visit your profile and see the people you email and chat with most (provided you didn't edit this list during profile creation)."

Nicholas Carson, *WARNING: Google Buzz has Huge Privacy Flaw*, February 10, 2010, available at http://www.businessinsider.com/warning-google-buzz-has-a-huge-privacy-flaw-2010-2.

25. Even a high ranking Obama Administration official (and former Google senior executive) fell prey to the unwanted outing of his personal emails and contacts as a result of Buzz. In a recent posting, Andrew McLaughlin, the White House Deputy Chief Technology Officer, complained: "I see a big default privacy flaw in Buzz: by default, Buzz adds the people you e-mail most as your 'followers', and then lists them on your public Google Profile Page, in other words, Google exposes the people you e-mail most, by default, to the world. That violates my sense of expectations - I expect the list of people I e-mail most to be kept private. What should I do? I guess I don't really have an option other than turning off Buzz. Any other ideas?" Available at http://biggovernment.com/capitolconfidential/2010/03/30/google-buzz-privacy-flaw-snags-another-victim-white-house-deputy-cto-andrew-mclaughlin/.

**Google Admits to Privacy Problems with Buzz**

26. On Thursday, February 11, 2010, Google reacted to the stream of negative press and blog postings by changing some of the default settings in Google Buzz.

27. Also on February 11, Google issued an official blog posting in which the company

---

CLASS ACTION COMPLAINT

6

admitted that many users had concerns that Buzz violated their privacy. Todd Jackson, *Millions of Buzz Users, and Improvements Based on Your Feedback*, February 11, 2010, available at http://gmailblog.blogspot.com/.

28.     Despite ongoing modifications, Google has not sufficiently altered the Buzz program to remedy the ongoing privacy violations caused by Buzz. For example, the information sharing features of the Buzz program continue to operate unless the user affirmatively opts out of these features.

29.     Google's official Privacy Policy assures customers that, because "[p]eople have different privacy concerns and needs. . . Google strives to offer [its users] *meaningful and fine grained choices* over the use of their personal information." Google Privacy Policy, http://www.google.com/privacy.html.

30.     By automatically sharing user information without user authorization or knowledge, Google Buzz does precisely the opposite. Far from granting its customers a fine-grained set of controls by which users can control the use of their personal data, the Google Buzz program is an indiscriminate bludgeon, forcing all Gmail users to share their personal data in a public forum without their consent or knowledge.

**Congress Requests FTC Investigation**

31.     Google Buzz has also resulted in a government outcry and harsh criticism. On or about March 25, 2010, Congress requested the U.S. Federal Trade Commission investigate Google's launch of its Google Buzz for breaches of consumer privacy.

32.     Congress noted in their request that Google Buzz resulted in a 9-year-old girl sharing her contact list in Gmail with a person who has a "sexually charged" username.

33.     In a recent presentation on consumer privacy, FTC member Pamela Jones Harbour ripped into Google for its handling of Buzz, calling the product's launch "irresponsible conduct."

CLASS ACTION COMPLAINT
7

**CLASS ALLEGATIONS**

34.    Plaintiff brings this complaint on behalf of themselves and the class of all Gmail users who reside in the United States and to whose accounts Google added the Buzz social networking application.

35.    The members of the putative class are so numerous that joinder of individual claims is impracticable. In January of 2009, Gmail had 31.2 million users in the United States. Anthony Ha, *Zimbra Tops 40M Paid Users: More Popular Than Gmail?*, March 5, 2009, available at http://venturebeat.com/2009/03/05/zimbra-tops-40m-paid-users-more-popular-than-gmail/. Google automatically added the Buzz program to most or all of these accounts.

36.    There are significant questions of fact and law common to the members of the class. These issues include: whether the Google Buzz program publicly shared user information and if so, what user information Google shared and how; whether Google failed to provide adequate information and opt out procedures for its Gmail users; whether by committing these acts and omissions Google violated federal and state laws; and whether class members are entitled to injunctive, declarative and monetary relief as a result of Google's conduct.

37.    Plaintiff' claims are typical of the claims of the putative class. Plaintiff and all members of the putative class have been adversely affected and damaged in that Google publicly shared their private information without the class members' knowledge or consent.

38.    The proposed class representatives will fairly and adequately represent the putative class because they have the class members' interest in mind, their individual claims are co-extensive with those of the class, and because they are represented by qualified counsel experienced in class action litigation of this nature.

39.    A class action in this instance is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the putative class is impracticable. Many members of the class are without the financial resources necessary to pursue this matter. Even if some members of the class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of

1   resolving a common dispute concerning Google's actions toward an entire group of individuals.

2   Class action procedures allow for far fewer management difficulties in matters of this type and

3   provide the unique benefits of unitary adjudication, economy of scale and comprehensive

4   supervision over the entire controversy by a single court.

5       40.    The putative class may be certified pursuant to Rule 23(b)(2) of the Federal Rules

6   of Civil Procedure because Google has acted on grounds generally applicable to the putative

7   class, thereby making final injunctive relief and corresponding declaratory relief appropriate with

8   respect to the claims raised by the class.

9       41.    The putative class may be certified pursuant to Rule 23(b)(3) of the Federal Rules

10   of Civil Procedure because questions of law and fact common to class members will predominate

11   over questions affecting individual members, and a class action is superior to other methods for

12   fairly and efficiently adjudicating the controversy and causes of action described in this

13   Complaint.

14   ### COUNT ONE

15   **(Stored Communications Act, 18 U.S.C. § 2701 *et seq.*)**

16       42.    Plaintiff repeat and reaffirm the assertions of fact contained in paragraphs 1

17   through 38 above.

18       43.    Defendant Google provides an electronic communications service to the public via

19   its "Gmail" email program. 18 U.S.C. § 2510(15).

20       44.    A user's contact list is an electronic communication within the meaning of 18

21   U.S.C. § 2510(12).

22       43.    As part of its Gmail service, Google holds its users' contact lists in electronic

23   storage on its servers. 18 U.S.C. § 2510(17).

24       45.    The Buzz program automatically creates for each user a list of "followers" and

25   "persons following" the user. Buzz creates the follower/following list by selecting the most

26   frequent contacts on the user's contact list.

27       46.    A user's follower/following list is an electronic communication within the

28   meaning of 18 U.S.C. § 2510(12).

47.     Google holds its users' follower/following lists in electronic storage. 18 U.S.C. § 2510(17).

48.     By sharing users' follower/following lists with the users' "followers" and making follower/following lists publicly searchable on the Internet, Defendant Google knowingly divulges the contents of communications while those communications are in electronic storage in violation of 18 U.S.C. §2702(a)(1).

49.     A Gmail user's Google Profile is created by the user and contains information that the user chooses to place in her Profile, such as the user's contact information, likes and dislikes, occupation, etc.

50.     A user's Google Profile is an electronic communication within the meaning of 18 U.S.C. § 2510(12).

51.     Google holds its users' Google Profiles in electronic storage. 18 U.S.C. § 2510(17).

52.     By sharing users' Google Profiles with the users' "followers" without consent from its users, Defendant Google knowingly divulges the contents of communications while those communications are in electronic storage in violation of 18 U.S.C. §2702(a)(1).

53.     Pictures, videos, and text that individuals post on public websites such as Picasa and YouTube are electronic communications with the meaning of 18 U.S.C. § 2510(12).

54.     Google holds information that individuals have posted to Picasa, YouTube, and other public websites owned by Google in electronic storage. 18 U.S.C. § 2510(17).

55.     Without authorization or consent from its users, the Google Buzz program searches for and collects information that its users have posted on various public websites owned by Google, including but not limited to Picasa and YouTube.  The Buzz program then sends the collected information to the user's "followers."

56.     By sharing with the users' "followers" posts that users had placed on YouTube, Picasa, and other websites, Defendant Google knowingly divulges the contents of communications while those communications are in electronic storage in violation of 18 U.S.C. §2702(a)(1).

57.     Google provides remote computing services to the public because it provides computer storage and processing services by means of an electronic communications system. 18 U.S.C. § 2711(2).

58.     Google carries and maintains its users' contact lists, follower/following lists, Google Profile information, and Picasa, YouTube, and other website posts solely for the purpose of providing storage and computer processing services to its users. Google is not authorized to access this information for purposes other than providing storage and computer processing. 18 U.S.C. § 2702(a)(2).

59.     By engaging in the foregoing acts and omissions, Google knowingly divulges the contents of communications that are carried and maintained by Google on behalf of, and received by transmission from, users of Google's Gmail service in violation of 18 U.S.C. § 2702(a)(2).

60.     By engaging in the foregoing acts and omissions, Google divulges its users' electronic communications to persons who are not the intended addressees or recipients. 18 U.S.C. § 2702(b)(1).

61.     Google engages in the foregoing acts and omissions without obtaining the lawful consent of either the originators or the intended addressees or recipients. 18 U.S.C. § 2702(b)(3).

62.     For some Gmail users, Google activates the information-divulging features of the Buzz program if the user fails to affirmatively opt-out of those features. A user's failure to affirmatively opt-out does not constitute consent within the meaning of 18 U.S.C. § 2702(b)(3).

63.     For some Gmail users, Google activated the information-divulging features of the Buzz program automatically, without providing the user any opportunity to opt-out and without obtaining any consent or authorization from the user.

64.     None of the foregoing acts and omissions taken by Google are necessarily incident to Google's rendition of its Gmail service or to the protection of Google's rights or property. 18 U.S.C. § 2702(b)(5).

65.     Because of the foregoing violations, Plaintiff on behalf of the class is entitled to appropriate relief, including preliminary and other equitable or declaratory relief as this court may deem appropriate. 18 U.S.C. § 2707(b)(1).

66.     Plaintiff on behalf of the class are entitled to a reasonable attorney's fee and other litigation costs reasonably incurred as provided by 18 U.S.C. § 2707(b)(3).

67.     Defendant Google profits from the information-divulging aspects of the Buzz program.  Google makes money by providing targeted advertising to persons who use its services.  Google introduced the Buzz program in an effort to draw traffic from "pure" social networking sites such as Facebook and MySpace.  By inducing users to spend more time using services provided by Google, and thus viewing advertisements provided by Google, Buzz increases Google's revenue.

68.     The Buzz program also increases the amount of information Google knows about each user, thus allowing Google to provide more narrowly tailored advertisements and increasing Google's revenue.

69.     Plaintiff on behalf of the class is entitled to recover monetary damages including actual damages, profits made by Google as described above, and statutory damages in the amount of not less than $1,000 per class member as provided by 18 U.S.C. § 2707(c).

70.     Because Google's violations were willful and intentional, Plaintiff on behalf of the class is entitled to recover punitive damages as provided by 18 U.S.C. § 2707(c).

## COUNT TWO

### (Wiretap Act, 18 U.S.C. §2510 *et seq.*)

71.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 through 68 above.

72.     Gmail users' contact lists, follower/following lists, Google Profiles, Picasa photographs, YouTube videos, and posts to other similar websites are electronic communications with the meaning of 18 U.S.C. § 2510(12).

73.     By sharing users' follower/following lists with the users' "followers" and making follower/following lists publicly searchable on the Internet, Defendant Google intentionally intercepts and discloses electronic communications in violation of 18 U.S.C. § 2511(1)(a) & (c).

74.     By sharing users' follower/following lists with the users' "followers" and making follower/following lists publicly searchable on the Internet, Defendant Google intentionally

1 divulges the contents of communications while in transmission on Google's Gmail service to

2 persons other than the intended recipients in violation of 18 U.S.C. § 2511(3)(a).

3     75.     By sharing users' Google Profiles with the users' "followers" without consent

4 from its users, Defendant Google intentionally intercepts and discloses electronic

5 communications in violation of 18 U.S.C. § 2511(1)(a) & (c).

6     76.     By sharing users' Google Profiles with the users' "followers" without consent

7 from its users, Defendant Google intentionally divulges the contents of communications while in

8 transmission on Google's Gmail service to persons other than the intended recipients in violation

9 of 18 U.S.C. § 2511(3)(a).

10     77.     By collecting users' public website posts and sending those posts to the users'

11 "followers," Google intentionally intercepts and discloses electronic communications in violation

12 of 18 U.S.C. § 2511(1)(a) & (c).

13     78.     Google is not a party to any of the above-mentioned communications, nor have

14 any of the parties to the communications given prior consent to Google's interception or

15 divulging of those communications. 18 U.S.C. § 2511(2)(d).

16     79.     For some Gmail users, Google activates the information-divulging features of the

17 Buzz program if the user fails to affirmatively opt-out of those features. A user's failure to

18 affirmatively opt-out does not constitute prior consent within the meaning of 18 U.S.C. §

19 2511(2)(d).

20     80.     For some Gmail users, Google activated the information-divulging features of the

21 Buzz program automatically, without providing the user any opportunity to opt-out and without

22 obtaining any consent or authorization from the user.

23     81.     Google does not obtain prior consent from Gmail users who have posted video,

24 pictures, or text on public websites such as Picasa and YouTube before sending these posts to the

25 users' "followers."

26     82.     None of the foregoing acts and omissions taken by Google are necessarily incident

27 to Google's rendition of its Gmail service or to the protection of Google's rights or property. 18

28 U.S.C. § 2702(b)(5).

83. Because of the foregoing violations, Plaintiff on behalf of the class is entitled to appropriate relief, including preliminary and other equitable or declaratory relief as this court may deem appropriate. 18 U.S.C. § 2520(b)(1).

84. Plaintiff on behalf of the class is entitled to a reasonable attorney's fee and other litigation costs reasonably incurred as provided by 18 U.S.C. § 2520(b)(3).

85. Plaintiff on behalf of the class is entitled to recover monetary damages in amounting to the greater of: (a) the sum of actual damages and any profits made by Google as a result of the violations of law caused by its introduction of Buzz; or (b) statutory damages in the amount of $100 per day of violation per class member, up to a maximum amount of $10,000 per class member. 18 U.S.C. § 2520(c)(2).

## COUNT THREE

### (Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*)

86. Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 through 83 above.

87. The servers on which Gmail users store their contact lists, other account information, and backup copies of previously transmitted emails are protected computers because they are used in and affect interstate and foreign commerce and communication. 18 U.S.C. § 1030(e)(2)(B).

88. The servers on which users of websites such as Picasa and YouTube store their videos, photographs, text and other information are protected computers because they are used in and affect interstate and foreign commerce and communication. 18 U.S.C. § 1030(e)(2)(B).

89. By taking stored user contact lists and using them to create follower/following lists, Defendant Google intentionally accessed a protected computer in excess of its authorization and obtained information from that computer in violation of 18 U.S.C. § 1030(a)(2)(C).

90. By sharing users' follower/following lists with the users' "followers" and making follower/following lists publicly searchable on the Internet, Defendant Google intentionally accessed a protected computer in excess of its authorization and obtained information from that computer in violation of 18 U.S.C. § 1030(a)(2)(C).

91.    By collecting users' Google Profile information and public website posts and sending this information to the users' "followers," Defendant Google intentionally accessed a protected computer in excess of its authorization and obtained information from that computer in violation of 18 U.S.C. § 1030(a)(2)(C).

92.    By engaging in the foregoing acts and omissions, Defendant Google caused economic damage to its users including but not limited to loss caused by the misappropriation of the economic value of Plaintiff's personality.

93.    Defendant Google has caused loss to one or more persons during a one-year period aggregating to at least $5,000 in value.  18 U.S.C. § 1030(c)(4)(A)(i)(I).

94.    Because of the foregoing violations, Plaintiff on behalf of the class is entitled to compensatory damages, injunctive relief, and any other equitable relief this court deems appropriate as provided by 18 U.S.C. § 1030(g).

## COUNT FOUR

### (Public Disclosure Tort)

95.    Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 through 92 above.

96.    By engaging in the forgoing acts and omissions, defendant Google committed the common law tort of Public Disclosure of Private Facts as recognized by California common law. The Google Buzz program resulted in the public disclosure of private facts which would be offensive and objectionable to a reasonable person, and which facts are not of legitimate public concern.

## PRAYER FOR RELIEF

97.    **WHEREFORE** Plaintiff, on behalf of himself and all others similarly situated, hereby demand judgment against defendant Google as follows:

a.    For an order certifying the Class proposed herein and appointing Plaintiff and their counsel to represent the Class;

b.    For a declaration that Google's acts and omissions constitute a knowing and unauthorized invasion of its users' privacy rights in violation of the laws of the United States and

1  the State of California;

2          c.      For preliminary and permanent injunctive relief enjoining and preventing Google

3  from continuing to operate its Buzz program without appropriate safeguards, default provisions

4  and opt-in mechanisms to ensure that the private data of its users is not improperly disclosed or

5  transmitted in the future;

6          d.      For an award of damages, including without limitation damages for actual harm,

7  profits made by Google in the operation of its Buzz program, and statutory damages where

8  applicable;

9          e.      For an award of reasonable attorneys' fees and costs incurred by Plaintiff and the

10  members of the putative class in prosecuting this matter; and

11         f.      For an award of such other relief in law and equity to which Plaintiff and the

12  members of the putative class may be entitled.

13                              **JURY TRIAL DEMANDED**

14         Plaintiff demands a trial by jury for all claims so triable.

15

16  DATED: April 5, 2010                          SHUBLAW LLC

17                                               By: /s/ Jonathan Shub
                                                 Jonathan Shub (SBN 237708)
18
                                                 1818 Market Street, 13th Floor
19                                               Philadelphia, Pennsylvania 19102
                                                 Phone: (610) 453-6551
20                                               Fax: (215) 569-1606
                                                 Email: jshub@shublaw.com
21
                                                 Christopher A. Seeger (pro hac vice)
22                                               SEEGER WEISS LLP
                                                 One William Street
23                                               New York, New York
                                                 Phone: (212) 584-0700
24                                               Fax:    (212) 584-0799
                                                 Email: cseeger@seegerweiss.com
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lawrence Feldman (pro hac vice)
LAWRENCE E. FELDMAN &
ASSOCIATES
423 Tulpehocken Avenue
Elkins Park, Pennsylvania 19027
Phone: (215) 885-3302
Fax: (215) 885-3303
Email: leflaw@gmail.com

Eric Freed (SBN 162546)
**FREED & WEISS LLC**
111 West Washington Street, Suite 1311
Chicago, IL 60602
Phone: (312) 220-0000
Fax: (313) 220-7777
Email: eric@freedweiss.com

Howard G. Silverman
Kane & Silverman, P.C.
2401 Pennsylvania Ave, Suite 1C-44
Philadelphia, PA 19130
Phone: 215-232-1000
Fax: 215-232-0181
Email: HGS@palegaladvice.com

*Attorneys for Plaintiff
and the Proposed Class*